IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CASE NO.: 2:22-cr-26-52 |
| JAMEY E. SAPP, | |
| Defendant. | |

## ORDER AND REPORT AND RECOMMENDATION

This matter is before the Court on the United States Probation's Petition for Action on Conditions of Pretrial Release. Doc. 1120. For the reasons set forth below, and the reasons stated during the May 18, 2023 Bond Revocation Hearing in this matter, the Court **REVOKES** Mr. Sapp's release pending trial, and Mr. Sapp is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility pending trial in this case. The undersigned **RECOMMENDS** that the appearance bond in the amount of $300,000 secured by real property known as 617 Brockinton Point, St. Simons Island, Georgia, and a 2022 Chevrolet Silverado be **FORFEITED**, but that the entire collateral for the $300,000 bond be **SET ASIDE** under Federal Rule of Criminal Procedure 46(f)(2).

### BACKGROUND

Mr. Sapp was charged by indictment in this matter with: Count One, Conspiracy to Possess with Intent to Distribute and to Distribute a Controlled Substance, 21 U.S.C. § 846. Doc. 3. On May 8, 2023, Mr. Sapp was released on bond pending trial, subject to certain conditions, including to report for supervision as directed by the supervising officer and to not use narcotic drugs or other controlled substances. Doc. 1107. Mr. Sapp's bond was set in the

amount of $300,000, secured by his own real and personal property, specifically, his condominium and his 2022 Chevy Silverado. Doc. 1108.

The United States Probation Office alleged in its Petition that Mr. Sapp failed to report for supervision as directed by the supervising officer, and Mr. Sapp admitted to using cocaine and methamphetamine. Doc. 1120. According to the petition, on May 8, 2023, following Mr. Sapp's bond hearing, the U.S. Probation Officer instructed him to report to the probation office on May 9, 2023, at 9:00 a.m. for the purpose of receiving supervision instructions and the installation of location monitoring equipment. Mr. Sapp failed to report as instructed. Id. at 1. On May 9, 2023, Mr. Sapp submitted a urine specimen that field-tested positive for cocaine and methamphetamine. Prior to providing the specimen, Mr. Sapp stated that he used cocaine and methamphetamine a few days prior, while detained at the Glynn County Detention Center. After further questioning, Mr. Sapp admitted he used cocaine and methamphetamine at approximately midnight on May 8, 2023, after being released on bond. Id.

The Court held a Bond Violation Hearing on May 18, 2023. Mr. Sapp was given prior notice of the hearing, its purpose, and of the alleged violations. He appeared at the hearing with counsel and was afforded the opportunity to call witnesses and present evidence on his own behalf. Mr. Sapp did not testify at the hearing.

At the hearing, the Government asked the Court to revoke Mr. Sapp's release and requested that Mr. Sapp be detained pending trial. The Government also asked the Court to order forfeiture of Mr. Sapp's $300,000 bond. Mr. Sapp did not oppose the Government's request for detention and did not contest the violations of his bond conditions. However, Mr. Sapp opposed forfeiture of his bond security.

Mr. Sapp called United States Probation Officer Brad Chapman as a witness, and the Government cross-examined him. Officer Chapman explained that Mr. Sapp did not report to the probation office on May 9, 2023 at 9:00 a.m. as directed. Instead, about an hour later,

Officer Chapman attempted to call Mr. Sapp, but could not reach him.  Officer Chapman then called an individual Mr. Sapp had identified as a contact, who gave Officer Chapman a new phone number for Mr. Sapp.  The friend explained she was waiting on Mr. Sapp to arrive at her house so she could take him to the probation office.  Officer Chapman reached Mr. Sapp at the new number.  Mr. Sapp explained he was waiting on his friend to pick him up and take him to the probation office.  Officer Chapman told Mr. Sapp to remain at his residence.  Officer Chapman administered a drug test to Mr. Sapp once he arrived at Mr. Sapp's residence.  Mr. Sapp initially said he used drugs at the Glynn County Detention Center before he was granted bond.  However, he later admitted he used methamphetamine and cocaine at his residence on May 8, 2023.  Officer Chapman testified Mr. Sapp told him a female friend brought the drugs; Mr. Sapp did not say whether he had requested them.

The Government called Sergeant Michael Scott Sapp, an F.B.I. task force officer, as a witness.  Mr. Sapp was given an opportunity to cross-examine Sgt. Sapp but declined to do so.  Sgt. Sapp testified about an earlier January arrest of Mr. Sapp, where Mr. Sapp verbally challenged and berated the arresting officers.  Similarly, Sgt. Sapp testified that when officers arrested Mr. Sapp on May 9 for the pretrial release violation, Mr. Sapp berated the officers and called them vulgar names on the way to the jail.  Mr. Sapp did not physically flee or resist arrest.

The Government argued that forfeiture of Mr. Sapp's bond security was appropriate because he violated the conditions of his release so quickly upon release despite clear instructions from the Court and the U.S. Probation Officer.  The Government argued forfeiture would send a message to others that such violations will not be tolerated.  Mr. Sapp's counsel stated Mr. Sapp apologizes for his behavior.  Mr. Sapp's counsel argued justice requires setting aside the forfeiture of the bond collateral because forfeiture would leave Mr. Sapp without

property or financial means, because Mr. Sapp was arrested peacefully at his home, and because Mr. Sapp already faces the substantial consequences of bond revocation, and faces a possible loss of acceptance of responsibility if he is convicted and sentenced on the charged offense.

## DISCUSSION

### I.   Violations of Pretrial Release and Revocation of Release

Mr. Sapp did not contest or dispute the allegations in Petition, and, therefore, conceded he violated the conditions of his pretrial release as alleged. Additionally, the testimony presented during the Bond Revocation Hearing plainly shows Mr. Sapp violated the conditions of his release as alleged. Therefore, the Court finds by clear and convincing evidence that Mr. Sapp violated the conditions of his release, and the Court finds he is unlikely to abide by conditions going forward.[1]  18 U.S.C. § 3148(b).

Under § 3148, revocation of Mr. Sapp's release and detention pending trial is appropriate. It is undisputed Mr. Sapp violated the conditions of his release. Mr. Sapp clearly understood what he was required to do and what he was prevented from doing under his bond conditions. Mr. Sapp was aware that it was his responsibility to follow all conditions of his bond to report for supervision as directed, to not use narcotic drugs or controlled substances, and to comply with all other conditions as set out in the Order Setting Conditions of Release.  Doc. 1107.

Accordingly, Mr. Sapp is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility. Mr. Sapp shall be confined in a corrections facility separate, to the extent practicable, away from his Codefendants in this case.

---

[1]   The Petition alleges Mr. Sapp unlawfully possessed and used controlled substances (i.e., cocaine and methamphetamine) almost immediately upon his release from pretrial detention. These allegations—which are undisputed—establish Mr. Sapp "committed a Federal, State, or local crime while on release . . . ." 18 U.S.C. § 3148(b)(1)(A). This provides an additional basis for revocation of Mr. Sapp's pretrial release and gives rise to a rebuttable presumption that no condition or combination of conditions will assure Mr. Sapp will not pose a danger to the safety of any other person or the community.  Id. § 3148(b).

Mr. Sapp shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of any attorney for the Government, the person in charge of the corrections facility shall deliver Mr. Sapp to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

## II.     Forfeiture

Having found that a condition of the appearance bond has been breached, based on Federal Rule of Criminal Procedure 46(f)(1), the Court "must declare the bail forfeited." Fed. R. Crim. P. 46(f)(1). Forfeiture is triggered not just by a failure to appear but also by violations of other conditions. Brown v. United States, 410 F.2d 212, 218 (5th Cir. 1969). As described above, Mr. Sapp has breached the express conditions of his release, and, therefore, his bond must be forfeited.

However, under Federal Rule of Criminal Procedure 46(f)(2), the Court may set aside a forfeiture, in whole or in part, if "it appears that justice does not require bail forfeiture." Fed. R. Crim. P. 46(f)(2). Rule 46(f)(1) combines with Rules 46(f)(2) and (f)(4) to give district courts "virtually unbridled discretion" in remitting bond forfeiture. United States v. Gonzalez, 452 F. App'x 844, 845 (11th Cir. 2011). Factors that courts consider when assessing whether to set aside all or a portion of a forfeiture include: the defendant's willfulness in breaching release conditions; the amount of delay caused by the defendant's default; the surety's participation; the cost, inconvenience, and prejudice suffered as a result of the breach; any mitigating factors offered by the defendant; and whether the surety is a professional as opposed to a family member or friend. United States v. Diaz, 811 F.2d 1412, 1415 (11th Cir. 1987); United States v. Nguyen, 279 F.3d 1112, 1115–16 (9th Cir. 2002).

In consideration of the entire record, I find that justice does not require bail forfeiture and, therefore, the forfeiture should be set aside in this case. The swiftness with which Mr. Sapp violated his conditions, his initial lies about when his drug use occurred, and his conduct toward law enforcement officers all indicate willfulness and support forfeiture. However, it appears Mr. Sapp has a long history of substance abuse and may struggle with addiction. The record suggests Mr. Sapp's addiction likely caused or contributed to his drug use on May 8, 2023. Any delay caused by Mr. Sapp's default was minimal because of Mr. Sapp's quick violation and apprehension. Mr. Sapp's violations resulted in some cost and inconvenience to the Court and the Government, but this burden was not extraordinary. Mr. Sapp saved time and resources by not opposing his revocation and not contesting his violations. Counsel for Mr. Sapp demonstrated some mitigating factors at the hearing, including the burden forfeiture would present, the likelihood of forfeiture leaving Mr. Sapp destitute, and the possibility of Mr. Sapp losing any benefit for acceptance of responsibility at sentencing because of his conduct. Although the Court has discretion to order forfeiture—and certainly could decline to set aside forfeiture in this case—I find that justice does not require bail forfeiture. To be sure, even slightly worse facts might compel a different conclusion. However, based on this specific record, I **RECOMMEND** the Court **SET ASIDE** the forfeiture.

## CONCLUSION

In light of the foregoing, and for the reasons stated during the May 18, 2023 Bond Revocation Hearing in this matter, the Court **REVOKES** Mr. Sapp's release pending trial, and Mr. Sapp is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility pending trial in this case. The undersigned **RECOMMENDS** that the appearance bond in the amount of $300,000 secured by real property

known as 617 Brockinton Point, St. Simons Island, Georgia, and a 2022 Chevrolet Silverado be **FORFEITED**, but that the entire collateral for the $300,000 bond be **SET ASIDE** under Federal Rule of Criminal Procedure 46(f)(2).

The Court **ORDERS** any party seeking to object to this Order and Report and Recommendation to file specific written objections within 14 days of the date on which this Order and Report and Recommendation is entered. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions herein.  See Thomas v. Arn, 474 U.S. 140, 155 (1985).

If the Court receives any timely objections to the Order that Defendant be detained pending trial, a district judge will review such objections and will modify or set aside a part of the Order only if it is contrary to law or clearly erroneous.  Fed. R. Crim. P. 59(a).  If the Court receives any timely objections to the Report and Recommendation regarding forfeiture, a district judge will consider such objections and, upon a de novo review of the record, may accept, reject, or modify, in whole or in part, these findings or recommendations.  28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b).  Objections not meeting the timeliness and specificity requirements set out above will not be considered by a district judge.  The Court **DIRECTS** the Clerk of Court to serve a copy of this Order and Report and Recommendation upon all parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 22nd day of May, 2023.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA